IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

FILED

November 18, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

JAN PAIGE (PHILLIPS) CAGLE,            )
                                       )
          Plaintiff/Respondent/        ) Hardin Chancery No. 5678 (5436-R1)
          Appellee,                    )
                                       )
VS.                                    )  Appeal No. 02A01-9710-CH-00265
                                       )
STEVE WHITLOW CAGLE,                   )
                                       )
          Defendant/Petitioner         )
          Appellant.                   )


APPEAL FROM THE CHANCERY COURT OF HARDIN COUNTY
AT SAVANNAH, TENNESSEE
THE HONORABLE WALTON WEST, CHANCELLOR


**RON E. HARMON**
Savannah, Tennessee
Attorney for Appellant


**W. LEE LACKEY**
Savannah, Tennessee
Attorney for Appellee


**AFFIRMED**


                                        **ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**
          Respondent Steve Whitlow Cagle (hereinafter referred to as "Father") appeals the

trial court's order requiring him to pay his son's college expenses pursuant to the MDA entered into with Plaintiff Jan Paige (Phillips) Cagle (hereinafter referred to as "Mother") at the time of their divorce. For the reasons hereinafter stated, we affirm the judgment of the trial court.

## I. Factual and Procedural History

Father and Mother were divorced on November 9, 1993 and the Mother was awarded custody of the parties' minor child, Corey Cagle, age 16. The parties entered into a marital dissolution agreement ("MDA") with which the parties were ordered to comply with in the Decree of Divorce.

The MDA provides in pertinent part;

> Further with regard to the minor child, Corey Steven Cagle, the Father's interests and desires shall be considered in the post high school education received by the minor child and Father hereby agrees to be responsible for the payment of his son's college expenses provided the son is attending school and exerting reasonable effort. It is the Father's desire that his son complete his college education and he hereby expressly agrees to exert his effort and lend all necessary financial support to achieve that end. This is expressly conditioned upon the child's cooperation in attending school and will in no way obligate the Father if the son refuses to exert reasonable efforts toward his education.

Corey was in tenth grade at the time of the divorce. Mother takes the position that in discussions about college, Corey mentioned going to Freed-Hardeman. Father contends that he anticipated that his son would attend a public university because "state school was all that was ever mentioned as a possibility. No private school."

Upon graduation from high school, Corey received a scholarship from Middle Tennessee State University (MTSU). The scholarship was contingent upon the maintenance of a minimum grade point average. In his second year at MTSU, Corey's grade point average dropped below a 2.9 and he forfeited his scholarship. Corey had a grade point average of 2.76 at the end of his fourth semester.

Corey accumulated 50 credit hours toward a degree at MTSU. A minimum of 132 credits is required for completion of a bachelor's degree. For Corey to graduate within four years, he would have needed to complete 64 credit hours by the completion of his second year. Thus, if Corey anticipated graduating college in four years, Corey was 14 credit hours, or approximately one semester, behind by the end of his second year at MTSU.

Corey was unhappy at MTSU due to the atmosphere and the people so, after two years at MTSU, Corey transferred to Freed-Hardeman. Father was notified that Corey was transferring to Freed-Hardeman, but he was not consulted prior to Corey's decision. Father refused to pay for any expenses at Freed-Hardeman. The expenses at Freed-Hardeman were approximately Eleven Thousand Two Hundred Eighty-Four Dollars ($11,284.00) per year.

While Corey was attending MTSU, Father furnished him with a car, insurance, a credit card, and an allowance of $100.00 per week. Father also paid for all of Corey's expenses at MTSU, including the balance due for tuition, room, and board after the credit from the scholarship. Father estimated that he paid $10,000.00 or more each year for Corey's total expenses. Father agreed that his costs would be nearly the same for Corey to go to Freed-Hardeman if Father no longer provided him with all the extra expenses, including the car.

Father contends that Corey failed to exert reasonable efforts as required in the MDA and thus, he should be legally relieved of his obligation to pay college expenses. Father indicates however that it is still his desire to help Corey obtain a college education. On this issue, the trial court found that Corey's grades were satisfactory, his credit hours were sufficient, and he was exerting reasonable efforts.

Father asserts that he should not be required to pay the college expenses for private school as there was an understanding between the parties that Corey would attend a public university. There was some dispute as to whether private school was ever

3

contemplated and the provision in the MDA does not limit the college choice to a public school. The trial court held that it was not going to construe the terminology "college expenses" to include only public schools.

Father further asserts that because his interests and desires were not considered, he should not be legally required to pay Corey's college expenses at Freed-Hardeman. The trial court ordered Father to pay the tuition, room, board, fees and books as college expenses at Freed-Hardeman under the MDA with credit given to Father for any non-repayable scholarships or grants received by Corey. The trial court reserved the issue of what other expenses might be included in the term "college expenses." This appeal by Father followed.

## II. Son's Exertion of Reasonable Efforts

Rule 13(d) of the Tennessee Rules of Appellate Procedure states as follows:

> Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise.

Father urges us to find that the evidence preponderates against the trial court's finding on the son's exertion of reasonable efforts. At trial, testimony and exhibits were offered to show that son's grade point average was 2.76 at the end of two years at MTSU. Although he was 14 credits behind where he should be to graduate within a four year period, testimony was offered that the son consistently carried at least 12 credits, which qualifies him as a "full time" student.

The trial court attached little significance to the fact that the son lost his scholarship after his second year at MTSU. The agreement to finance the son's college expense was entered into when he was in tenth grade. At the time of the agreement, the parties did not necessarily know if the son would in fact receive any scholarships.

4

While there was some evidence that the son had skipped classes and also dropped some classes from his schedule, the finding of the trial court is entitled to a presumption of correctness. The evidence in this case does not preponderate against the trial court's finding. Applying the foregoing standard, we affirm the trial court's finding that the son exerted reasonable efforts toward his college education. Father shall not be relieved of his contractual duty to pay the son's college expenses on that basis.

### III. Public v. Private University

Generally, a marital dissolution agreement between husband and wife dealing with legal duty of child support, or alimony over which the court has continuing statutory power to modify, loses its contractual nature when merged into a decree of divorce. Penland v. Penland, 521 S.W.2d 222 (Tenn. 1975). However, an agreement which imposes upon a party to pay all future educational expenses of children beyond high school level, and which necessarily envisions an obligation beyond the age of majority, constitutes "a contractual obligation outside the scope of the legal duty of support during minority and retains its contractual nature, although incorporated in a final decree of divorce." Penland at 224-25.

The trial court's interpretation of the provision of the MDA at issue, being contractual in nature, is not entitled to a presumption of correctness under Tenn.R.App.P. 13(d) since contract interpretation involves legal rather than factual inquiry. Hillsboro Plaza Enterprises v. Moon, 860 S.W.2d 45, 47 (Tenn. App. 1993). Our task is to review the contract anew and make our own independent determination of the agreement's meaning. Id. at 47. However, this Court is not at liberty to make a new contract for parties who have spoken for themselves nor are we at liberty to relieve parties from their contractual obligations simply because these obligations later prove to be burdensome or unwise. Id.

Contractual language should be given its usual, natural, and ordinary meaning, and the courts should avoid strained constructions that create ambiguities where none actually

5

exist. Id. at 47-48. The language of the MDA provides that Father shall be "responsible for the payment of his son's college expenses . . . " The agreement does not by its terms limit "college" to mean only "public college." If Father had wanted to be responsible for his son's college expenses only upon the son attending a public university, the MDA provision could have been drafted to include such limiting language.

Father requests that this Court interpret the marital dissolution agreement to require him to pay only the reasonable costs of his son's education. This Court recognizes that Father's contractual obligation is subject to an implied condition of reasonableness. Moore v. Moore, 603 S.W.2d 736, 739 (Tenn. App. 1980). However, while Father at one point in trial took the position that money was the issue, Father took the position several other times at trial that money is not the real issue in his objection to the private university. In fact, Father agreed that his costs would be nearly the same for his son to go to Freed-Hardeman if Father no longer provided him with all the extra expenses, including the car.

Father urges this Court to find that a reasonable college tuition is that obtained at a public, state-supported university. He contends that the term "college" should be interpreted to mean "public college" because that was the intention of the parties at the time of contracting. To arrive at the intention of the parties it is permissible to consider the circumstances of the parties at the time the contract was formed, Hamblen County v. City of Morristown, 656 S.W.2d 331 (Tenn. 1983), and an unexpressed obligation will be implied when it is clear it was intended. Id. at 334.

The problem in this case is that it is not clear that this unexpressed term, "public" college, was intended. Father testified that there was an understanding between him and the mother that their son would attend a public college. He contends that private school was never discussed and therefore it was never his intention to obligate himself to pay the tuition costs associated with a private college. The son testified that he had mentioned Freed-Hardeman to his parents prior to the time they entered into the MDA. Mother did not testify on this issue. Therefore, it is not clear to this Court that there was a mutual

6

understanding between the parties at the time of contracting that the term college should be limited to "public college."

It appears, therefore, that the ordinary meaning of the term "college" shall control. A contract must be enforced according to the ordinary meaning of its words unless both parties understand and agree at the time of the contract that its meaning is otherwise. Moore v. Moore, 603 S.W.2d 736, 739 (Tenn. App. 1980); Hardwick v. American Can Co., 113 Tenn. 657, 88 S.W. 797 (1905). Its ordinary meaning is that meaning which would have been derived from its words by reasonable persons dealing in the same situation as that of the contracting parties. Moore at 739.

Having decided that the ordinary meaning of college shall control, we must look to the trial court's factual determination of whether Freed-Hardeman is encompassed by the term "college." The trial court found that Freed-Hardeman was "a reasonable cost of obtaining an education." As the evidence presented does not preponderate against this finding, it is entitled to a presumption of correctness. For all the foregoing reasons, this Court affirms the trial court's finding that the term "college" is not limited to "public college," and that Freed-Hardeman is a reasonable college choice and is encompassed by the term "college" found in the MDA.

### IV. Consideration of Father's Interests and Desires

The more difficult question in this case is the provision in the MDA which states "[t]he Father's interests and desires shall be considered in the post high school education received by the minor child . . . " It appears from the evidence before this Court that although Father was informed that the son was transferring to Freed-Hardeman, no one consulted with Father about his interests and desires prior to making such decision.

Father testified that demands were made that he pay for the son to go to private school. Father also took the position that the son's transfer to Freed-Hardeman was out

of vindictiveness for Father refusing to pay or co-sign a $28,000.00 car loan for the son. On the other hand, son testified that he transferred to Freed-Hardeman because he was unhappy with the atmosphere and people at MTSU and the atmosphere at Freed-Hardeman was much better. He further stated that his transfer from MTSU to Freed-Hardeman had nothing at all to do with getting back at his father.

All words and phrases placed in a contract shall be given effect whenever possible. In <u>Associated Press v. WGNS, Inc.</u>, 348 S.W.2d 507, 512 (Tenn. App.1961), the court spoke on contract interpretation:

> It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.
>
> As is said in 6 R.C.L. page 838 under the title "Contracts,"
>
> "Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized if that course is reasonably possible. Each of its provisions must be considered in connection with the others, and, if possible, effect must be given to all. A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all of its provisions. The courts will look to the entire instrument, and, if possible, give such construction that each clause shall have some effect, and perform some office."

We must therefore give effect to the phrase which states, "Father's interests and desires shall be considered" if at all possible. But what exactly does that phrase mean? One interpretation could be that Father shall be able to express his desires as to the choice of college, or even more narrowly, the choice of the curriculum his son is to follow. On a broader level, the interests and desire of Father may be solely Father's desire that the son obtain a college education at any college and of any curriculum.

Father testified at trial that it was always his understanding that his son would attend a state college. When asked at trial if he was willing to pay the room, board, tuition and college fees for his son at Freed-Hardeman, Father stated "at this point in time, no" and then that "it's negotiable." He later stated that he was still willing to help his son obtain his

education but he feels that he should not be made to do that. Father also testified that mathematically, it would likely cost the same amount to send his son to Freed-Hardeman as he was paying altogether at MTSU, if he no longer furnished the son with a car and the other additional expenses.

In the son's testimony, he stated that Father told him he did not want the son to go to Freed-Hardeman because Father did not like the Church of Christ and because it was too expensive. However, in his own testimony, Father did not mention his dislike of the Church of Christ as a reason for his refusal to pay for son to attend Freed-Hardeman. As discussed more fully above, Father testified that although public college was all that was ever discussed and contemplated, the cost of attending the private school would not be substantially higher than his cost, with extras, at MTSU.

The agreement also does not provide what the effect shall be of Father's interests and desires. After such interests and desires are considered by the son, it appears the son is still able to make his own choices as the agreement gives no veto power to Father. In interpreting the provision at issue, the trial court found that "the Father's interests and desires will be considered in that he has testified that he wanted him to attend college," apparently interpreting the provision in its broadest terms.

While this Court recognizes that Father's interests and desires as to choice of college were not considered in this matter, the Court is also mindful that Father has provided no substantive reason for his disagreement with son's choice of Freed-Hardeman. Father has not given any legitimate reason why he would have objected had his interests and desires been considered. His objection appears a technical one: that he should not be made to pay when his interests were not taken into account. This Court is reluctant to sustain Father's objection on this technical ground without any substantive reason for his refusal. Accordingly, we hold that Father shall not be relieved of his obligation to fund his son's college expense at Freed-Hardeman on the ground that his interests and desires were not considered.

9

## V. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to the Father, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.